*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

THE ASSOCIATION OF NEW JERSEY
CHIROPRACTORS, INC. AND ROBERT
BLOZEN, D.C.,

                Plaintiffs,

v.

HORIZON HEALTHCARE SERVICES, INC.,
D/B/A HORIZON BLUE CROSS
BLUE SHIELD OF NEW JERSEY, INC.,

                Defendant.

Civil Action No. 16-08400(FLW)

OPINION

---

**WOLFSON, United States District Judge:**

Plaintiffs, the New Jersey Association of Chiropractors (the "Association") and Robert Blozen, D.C. (collectively, "Plaintiffs"), initiated this action against Defendant Horizon Healthcare Services, Inc. ("Horizon" or "Defendant"), seeking a declaration that Defendant's health insurance plan discriminates against Plaintiffs in violation of the Healthcare Quality Act of 1997, N.J.S.A. § 17B:27-51.1, and § 2706 of of the Patient Protection and Affordable Care Act (the "ACA"). Presently before the Court is Defendant's Motion to Dismiss Plaintiffs' Complaint, brought pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court dismisses the Complaint for failure to state a federal claim under the ACA, declines to exercise supplemental jurisdiction over the remaining state law claims, and remands the matter to the Superior Court of New Jersey, Law Division, Somerset County.

1

I.      **STATEMENT OF FACTS AND PROCEDURAL HISTORY**

The Association is a New Jersey not-for-profit 501(c)(6) corporation, consisting of over 2,000 licensed chiropractors, which exists to "promote the chiropractic profession and the interests of chiropractors in the State of New Jersey." Pls.' Compl. ¶ 1. Dr. Blozen is a chiropractor and member of the Association. *Id.* at ¶ 2. Defendant is a New Jersey health services corporation, formed pursuant to N.J.S.A. § 17:48E-1 *et seq.*, and is in the business of underwriting and administering various forms of health insurance coverage, including individual, employer-sponsored, and governmental health insurance plans. *Id.* at ¶ 3.

On September 15, 2015, the New Jersey Department of Banking & Insurance ("NJDOBI") approved the sale of Horizon's OMNIA Plan. *Id.* at ¶ 5. The OMNIA Plan is a tiered provider network, consisting of two tiers of health care providers, designated as Tier 1 and Tier 2. *Id.* at ¶ 4. Horizon members choosing to treat with a provider in Tier 1 have lower levels of cost sharing than members who choose to treat with a provider in Tier 2, including reduced deductibles and co-insurance payments. *Id.* at ¶ 5. For example, according to Plaintiffs, a Horizon insured seeking chiropractic benefits under the OMNIA Silver-On Exchange Plan would have no individual deductible, family deductible, or coinsurance obligation if he was treated by a Tier 1 provider, but would have a $2,500 individual deductible, $5,000 family deductible, and a 50% coinsurance obligation if he was treated by a Tier 2 provider. *Id.* at ¶ 6.

According to Plaintiffs' Complaint, while there are 1,373 in-network chiropractors in the OMNIA Plan, Horizon has designated only 88 of those chiropractors, or 6.41% of in-network chiropractors, at Tier 1 providers. *Id.* at ¶¶ 7-8. By contrast, Plaintiffs allege that Horizon has designated 77.68% of in-network occupational therapists, 65.81% of in-network physical medical

2

and rehabilitation providers, 79.85% of in-network physical therapists, and 66.46% of in-network pain management doctors as Tier 1 providers. *Id.* at ¶ 8.

Plaintiffs allege that Horizon's decision-making process for designating certain providers as Tier 1 or Tier 2 lacks transparency. *See id.* at ¶ 9. In that regard, Plaintiffs aver that chiropractic physicians who participated in Horizon's prior plans were automatically placed in the OMNIA network and were tiered without explanation, and that the only information its members received regarding Horizon's tiering determination was a generic letter stating that Horizon "conducted an extensive evaluation to determine tier status." *Id.* at ¶¶ 9-10.

On September 16, 2016, Plaintiff filed this action in New Jersey Superior Court, seeking declarations that the OMNIA Plan's tiering structure violates: (1) the Healthcare Quality Act of 1997; (2) N.J.S.A. § 17B:27-51.1; and (3) § 2706 of ACA.[1] *See* Pls.' Compl. On November 10, 2016, Defendant filed its timely Notice of Removal ("Notice") in this Court, asserting federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, based solely on Plaintiffs' ACA claim. Notice at 1. Defendant filed the instant Motion to Dismiss Plaintiffs' Complaint on December 1, 2016. ECF No. 7.

## II. <u>LEGAL STANDARD</u>

In reviewing a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the

---

[1] Specifically, Plaintiffs allege that Defendant violated § 2706 of the ACA, which prohibits health insurers offering group or individual health insurance coverage from discriminating "with respect to participation under the plan or coverage against any health care provider who is acting within the scope of that provider's license or certification," by placing 94% of chiropractors in Tier 2 of the OMNIA Plan, and thus, discriminating against chiropractic physicians based upon their type of licensure, as compared to other providers. 42 U.S.C. § 300gg-5(a)

3

complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). As such, a motion to dismiss for failure to state a claim upon which relief can be granted does not attack the merits of the action, but merely tests the legal sufficiency of the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009); *see also* FED. R. CIV. P. 8(a)(2) ("[a] pleading that states a claim for relief ... must contain a short and plain statement of the claim showing the pleader is entitled to relief"). In other words, to survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

However, "the tenet that a court must accept as true all the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). A plaintiff must show that there is "more than a sheer possibility that the defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In other words, for the plaintiff to prevail, the "complaint must do more than allege the plaintiff's entitlement to relief"; it must "'show' such an entitlement with its facts." *Fowler*, 578 F.3d at 211 (citing *Phillips*, 515 F.3d at 234–35).

The Third Circuit has cautioned, however, that *Twombly* and *Iqbal* "do not provide a panacea for defendants"; rather, "they merely require that plaintiff raise a 'plausible claim for relief.'" *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 679). Thus, factual allegations must be more than speculative,

but the pleading standard "is not akin to a 'probability requirement.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

## III. DISCUSSION

Defendant maintains that Count III of Plaintiffs' Complaint, asserting a claim pursuant to § 2706 of the ACA, must be dismissed, on the ground that § 2706 does not create a private right of action. The Court agrees.

### A. § 2706 of the ACA Does Not Create a Private Right of Action

To determine whether § 2706 of the ACA creates a private right of action, the Court must look, first, to the plain language of the statute itself. *See Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979) ("The question of the existence of a statutory cause of action is, of course, one of statutory construction."). Congress may create a private right of action to enforce federal law either through the explicit language of the statute or by implication. *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). To that end, "[i]n the absence of an explicit congressional mandate, a court must next look to Congress's intent in enacting a statute to determine whether it would be appropriate to infer a right of action for the party seeking to enforce it." *Am. Trucking Ass'n, Inc. v. Delaware River Joint Toll Bridge Comm'n*, 458 F.3d 291, 296 (3d Cir. 2006); *see Three Rivers Ctr. for Indep. Living v. Hous. Auth. of City of Pittsburgh*, 382 F.3d 412, 421 (3d Cir. 2004) ("Congress's intent in enacting a statute is always the 'focal point' in determining whether courts should infer a private right of action from the statute."). The Supreme Court has explained that in discerning whether Congress intended to create a private right of action, courts should analyze whether the statute displays an intent to create: (1) a private right of action in a class of beneficiaries that includes the plaintiff; and (2) a private remedy. *See Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("The judicial task is to interpret the statute Congress has passed to

5

determine whether it displays an intent to create not just a private right but also a private remedy."); *see also California v. Sierra Club*, 451 U.S. 287, 294 (1981) ("The question is not simply who would benefit from the Act, but whether Congress intended to confer federal rights upon those beneficiaries.").

The relevant statute at issue in this case, § 2706 of the ACA, is codified as 42 U.S.C. § 300gg–5 (a), and provides as follows:

> A group health plan and a health insurance issuer offering group or individual health insurance coverage shall not discriminate with respect to participation under the plan or coverage against any health care provider who is acting within the scope of that provider's license or certification under applicable State law. This section shall not require that a group health plan or health insurance issuer contract with any health care provider willing to abide by the terms and conditions for participation established by the plan or issuer. Nothing in this section shall be construed as preventing a group health plan, a health insurance issuer, or the Secretary from establishing varying reimbursement rates based on quality or performance measures.

42 U.S.C. § 300gg-5(a).

The Court finds that § 2706 of the ACA does not explicitly create a private right of action, and that implication of a private right of action would be improper in this case. In that regard, while the language of § 2706 arguably is phrased in terms of benefitting providers, it "gives no express indication of a desire to create a right of action to enforce the [non-discrimination] standard, nor is there any mention of a remedy for non-compliance." *Am. Trucking Ass'n*, 458 F.3d at 297. Moreover, Plaintiffs have not provided the Court with either case law or legislative history in support of their assertion that § 2706 contains an implied private right of action. Under these circumstances, the Court cannot find that Congress intended § 2706 to be enforceable by way of a private right of action.[2]

---

[2] Indeed, courts have traditionally been reluctant to find a private right of action in insurance statutes. *See Smith v. Conseco Life Ins. Co.*, No. 13-5253, 2014 WL 3345592, at *3 (D.N.J. July

Indeed, while no court in the Third Circuit has had occasion to analyze whether § 2706 of the ACA creates a private right of action, at least one other district court has concluded that § 2706, specifically, does not create a private right of action. *Dominion Pathology Labs., P.C. v. Anthem Health Plans of Virginia, Inc.*, 111 F. Supp. 3d 731, 736 (E.D. Va. 2015) ("The parties, and the court, agree that § 2706 of the ACA does not create a private right of action."). In *Dominion Pathology*, the plaintiff, a three-physician practice, alleged that the defendant, a health care insurance company, violated § 2706 of the ACA, as well as several state statutes, by reducing reimbursement rates for the plaintiff's services. *See id.* at 734-35. After the defendant removed the case to federal court, the plaintiff moved to remand the case. *Id.* at 735. The defendant argued that the court had federal question jurisdiction under 28 U.S.C. § 1331, because the plaintiff sought declaratory relief under the ACA. *See id.* In holding that the defendant failed to satisfy its burden of demonstrating the existence of federal subject-matter jurisdiction, the court found, without engaging in a detailed analysis, that § 2706 does not create a private right of action. *See id.* at 736-39.

Moreover, while several courts have found that § 1557 of the ACA[3] confers an implied right of action upon individuals, *see Se. Pennsylvania Transp. Auth. v. Gilead Scis., Inc.*, 102 F.

---

8, 2014) ("It is particularly 'unlikely' to find a private right of action in an area, like insurance, where a comprehensive legislative scheme provides for enforcement by regulators . . . .").

[3] Section 1557 of the ACA provides, in relevant part:

> Except as otherwise provided for in this title (or an amendment made by this title), an individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), or section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance,

7

Supp. 3d 688, 698 (E.D. Pa. 2015); *Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817, 848 (D.S.C. 2015); *Rumble v. Fairview Health Servs.*, No. 14-2037, 2015 WL 1197415, at *7 n. 3 (D. Minn. Mar. 16, 2015), I find that § 1557 is distinguishable from § 2706. Each of those cases involved allegations of discrimination on the basis of race, sex, gender, or disability, in violation of § 1557. *See Gilead*, 102 F. Supp. 3d at 696; *Callum*, 137 F. Supp. 3d at 832; *Rumble*, 2015 WL 1197415 at *7. In holding that Congress intended to create a private right of action for the enforcement of § 1557, the courts reasoned that § 1557 expressly incorporates four federal civil rights statutes,[4] including the enforcement mechanisms in those statutes, and includes "the kind of rights-creating language found in those statutes." *Gilead*, 102 F. Supp. 3d at 698; *Callum*, 137 F. Supp. 3d at 848 ("The Court finds Congress intended to create a private right and private remedy for violations of Section 1557 by expressly incorporating the enforcement provisions of the four federal civil rights statutes."); *Rumble*, No. 14-2037, 2015 WL 1197415 at *7 n. 3 ("The Court reaches this conclusion because the four civil rights statutes that are referenced and incorporated into Section 1557 permit private rights of action. . . . Because Section 1557 states that the enforcement mechanisms available under those four statutes apply to violations of Section 1557, Section 1557 necessarily also permits private causes of action."). However, unlike § 1557, § 2706 does not explicitly cross-reference other federal discrimination statutes, or the

---

        including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments). The enforcement mechanisms provided for and available under such title VI, title IX, section 504, or such Age Discrimination Act shall apply for purposes of violations of this subsection.

42 U.S.C.A. § 18116(a).
[4] The four civil rights statutes referenced in § 1557 are: (1) Title VI of the Civil Rights Act of 1964; (2) Title IX of the Education Amendments of 1972; (3) the Age Discrimination Act of 1975; and (4) Section 504 of the Rehabilitation Act of 1973

8

enforcement mechanisms referenced therein. Therefore, the Court finds that § 1557 is distinguishable from § 2706.

In short, § 2706 is devoid of any rights-creating language, and, because Congress did not prescribe a private remedy in that section, there is no basis for finding that Congress intended to create a private right of action by implication. Accordingly, the Court finds that § 2706 of the ACA does not create a private right of action, and thus, Count III of the Complaint, asserting claims pursuant to § 2706 of the ACA, is dismissed.[5]

## B. Supplemental Jurisdiction Over Remaining State Law Claims

Although the Complaint fails to state a federal claim, Plaintiffs also raise state law claims for relief. Because the Court has dismissed the federal ACA claim, the remaining basis for this Court's jurisdiction over Plaintiffs' state law claims is supplemental jurisdiction pursuant to 28 U.S.C. § 1367. "Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 387 (1998) (citation and internal quotation marks omitted). Where a district court has original jurisdiction over federal claims, pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over state claims, pursuant to 28 U.S.C. § 1367(a), the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *Growth Horizons, Inc.*

---

[5] To the extent that Plaintiffs argue that they have an independent private right of action under the Declaratory Judgment Act, 28 U.S.C. § 2201, the law is clear that "the Declaratory Judgment Act is not an independent source of federal jurisdiction; the availability of such relief presupposes the existence of a judicially remediable right." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960) (internal citation omitted). Thus, the Declaratory Judgment Act, alone, is not a sufficient basis for this Court to find that federal question jurisdiction exists.

*v. Delaware County, Pennsylvania*, 983 F.2d 1277, 1284–1285 (3d Cir. 1993). In exercising its discretion, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" *Growth Horizons, Inc.*, 983 F.2d at 1284 (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Moreover, where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims. *United Mine Workers*, 383 U.S. at 726; *Growth Horizons, Inc.*, 983 F.2d at 1284–1285.

Here, having dismissed the sole federal claim, the Court declines to exercise supplemental jurisdiction, particularly since this case is in its infancy. *See*, *e.g.*, *Monk v. New Jersey*, No. 14–1399, 2014 WL 4931309, at *3 (D.N.J. Oct. 2, 2014) ("Where a case has been removed from state court to federal court on the basis of federal question jurisdiction, the United States Supreme Court has recognized that a district court retains the discretion to remand that matter back to state court when all federal law claims have been dropped or dismissed from the action and only pendant state law claims remain."); *see also Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988); *Aronson v. Chase Bank USA, N.A.*, No. 10–1256, 2011 WL 9599, at *2 (W.D.Pa. Jan. 3, 2011). Accordingly, Defendant's Motion to Dismiss Plaintiffs' state law claims is denied without prejudice, and this matter is remanded to state court, where Defendant may raise any remaining issues.

**IV. CONCLUSION**

For the foregoing reasons, Plaintiffs' Complaint is dismissed for failure to state a federal claim under Fed. R. Civ. P. 12(b)(6); the Court declines supplemental jurisdiction over any remaining state law claims, and the Court remands the matter to the Superior Court of New Jersey, Law Division, Somerset County.

Dated: June 13, 2017

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
United States District Judge

11